The next station is E06-1587, automated tech v. Knapp Logistics May it please the court, my name is John Herman and with me at council table is Luke Golden. At this time, I would like to call together and represent the plaintiff, Appellant Automated Technologies. It's our position that the district court impermissibly read into the claims a preferred embodiment that requires a labeler apparatus to appear downstream or beneath the filling apparatus in the patent. We think this is necessary to go to the plain ordinary meaning of the claims in the prosecution history. First, taking a look at the plain ordinary language of the claims, there is no language in the claims that issue claims 1, 13, 18, or 22 that limits the position of the labeling apparatus vis-a-vis the filling apparatus. For example, claim 1 is absolutely silent as to where the position of the labeling apparatus has to be in the system. Claim 13 discusses the labeling apparatus being positioned to receive a vial. Again, there is no language in claim 13 that limits the position of the labeling apparatus relative to the filling apparatus. In claims 18 and 22, same thing. The labeling apparatus has to be positioned with respect to the filling line. Maybe you can go to the prosecution history. The examiner rejects the claim 26 as adding new matter because it is saying you can label before filling. Correct. There's two pieces of prosecution history that I think are of note. The first in time is the one that you cite, where there was a new matter rejection based on an attempt to have a direct claim read on the position of the labeling apparatus vis-a-vis the filling apparatus. That was properly rejected by the examiner. The second piece of prosecution history is the July 2001 amendment, where the claim was silent as to where the labeling apparatus had to be compared to the filling apparatus. It said in no particular order, claim 31 reads today, in no particular order it can be labeled and filled. So where the claim is silent, we don't think that there's any problem with the order. But where the examiner rejected the new matter amendment, we think that was proper. This is the exact case that this court held in the Ethicon case that we cite in our paper, Split Note 7, where the court draws a distinction between a new matter rejection like we have here and a rejection where the claim is not part of the invention. And that's looking at the case law that we cite, we think the cases that go for us and the cases that go against us, I think they're all consistent in that where the focused element interpretation where it's not part of the invention, it should not be read into the claims. Is the no particular order referring to the order in which you fill and label, or is it referring to the order in which you would handle separate requests for separate prescriptions? And if there were two, three, or four prescriptions for a single client, you would handle them in no particular order. We believe that the plain language of Claim 31 is whereby at least one discrete vial is, in no particular order, automatically filled with medication corresponding to the patient's prescription order and automatically labeled. We think that it's singular in the claim. At one point in the prosecution history, it was plural, but as Claim 31 issued, it's in the singular vial, it's in the singular, and we think that that has to be read, that the vial can be filled and labeled in any particular order. But either the interpretation is possible, either the no particular order refers to multiple prescriptions that can each be handled in no particular order, or it might be the question of whether the filling and the labeling happens in no particular order. We believe that it refers to where- I understand your position. I'm saying that the language doesn't resolve it, does it? We believe it does. It's our position that it does. What resolves it? The fact that it's in the singular. We think if it were plural, we would agree with you, but it's not. It's singular, the vial. But I'm not sure that it matters, because there is nothing in the intrinsic record that indicates that this is part of the invention. We'll go back to the new matter objection. It's new matter to try and suggest a change in the order, and you acquiesce to that, thus leaving the amendment in place that it's going to be during or after. Why doesn't that suggest that during or after is what you limited your invention to? If you go back to the original patent that issued, the 762 patent, there are two claims in there where ordering is unimportant. It's not part of the initial patent that was issued. How these elements were performed in the system did not matter. There was no prior art out there that limited what this invention could do. So it was not part of the specification, and we agree that that was a proper new matter objection, but it doesn't mean that it's part of the invention. And if you look at what we believe that the Court has consistently held, where it's not a critical part of the invention, there's nothing in the prosecution history that says it is. We don't think it's proper to read that limitation. The only place this appears outside of the new matter objection is in preferred environments in the patent. There's nothing outside. The three places cited by NAMP in the specification are all three preferred environments. So we don't think that there's anything other than those preferred environments where it's discussed. And as a practical matter, it doesn't matter whether it is. What's this new matter objection saying? There's nothing in the specification that indicates that the labeling can happen before the filling. Nothing. And you acquiesce to that. You say, okay, you're right. There's nothing in our specification that says that. Why isn't that an admission that your invention doesn't allow labeling before filling? Well, acquiescence, I don't think, meets this Court's test for a disavowal. It has to be clear and unmistakable. It has to be a statement not by the examiner, but a statement by the applicant, the patentee. And there's nothing- Well, the applicant is the one here who's not contesting at all with that new matter objection, and indeed amending the claim to say during or after. That's correct. But at the same time, there were other claims pending where ordering did not matter. It still doesn't, as we view Claim 31. That's consistent with the prior patent, the 762 patent that issued. And it's also consistent with the fact that there's nothing in the specification that says it has to occur during or after. There's absolutely, other than the preferred environments, there's no discussion where ordering has to happen. It's not part of this invention. We think that what's happened is there's been a conflation between the filling line and the filling apparatus, and that this Court connects a reading of the claims. I think the other claims, the language in the other claims, when AutoMed wanted ordering to be important, it put in clear language claiming that. For example, Claim 5 requires that you fill the vial first and then label. The language in there is clear. There's also discussions of where logically it has to happen. Obviously, the vial has to be filled before it can be capped, and the language is consistent with that. But we think other times it's absolutely silent as to whether it gets labeled or filled first. We don't think that that rises to the level of the new matter objections, not rise to the level of the clear and unmistakable disciplinary hearing. If I could take a moment to discuss the recent cases that are cited here, the Nystrom case where the term ward was interpreted. In that case, we think it's distinguishable because the term ward was agreed upon by the parties to have its ordinary customary meaning, which is it had to be sung from a ward or from a log. Here, we're not arguing about a term in the claims. There's no term in the claims that can be interpreted as narrowly as the district court did here. Similarly, the Gentry Gallery case that we talked about and the Kurdish right flow, both of those can be distinguished because those were essential elements of the invention. Here, we don't have that. Again, it doesn't matter for this invention to work at all, whether it gets labeled first or filled first. And then most recently, the Capricrate case, we think we fall clearly into that where the only support in the specification is in a preferred embodiment, which the district court then read into a limitation into the claims. So we think consistently under the court's jurisprudence that this case is distinguishable from those cases where the court relied on the fact that it was an essential element to afford a limitation into the claims. I will save the remainder of my time for a question. Sorry. Thank you, Your Honors. May it please the Court, my name is Steve Moore. I represent the Department of Logistics and Automation. If in an invention, there are three possible ways to do something, and only three possible ways, and the inventor says that you can't do it one of those ways, we prefer that you do it the second of those ways, but make absolutely no teaching as to the third of the possible ways about how that could be accomplished in an invention, then that's a clear statement. The invention is limited to the two ways you cite it. And that's the case here. Where, though, is there a clear statement that you're not going to do it the third way? Where in the specification? Where in the claim language? Where is there anything that says it can't be done, can't be labeled before you fill it? Particularly in a method like this where the steps are interchangeable. Anybody would expect you could interchange the steps. Help me out. Thank you, Your Honor. First of all, in the specification, the statement on the bottom of Column 3 and the top of Claim 4, which is the one we relied on in our briefs, which talks about of the three possible ways, there are two ways it can be done. That says, or indicates, implies, that the third way cannot be done. That's a preferred involvement. That's one way you might do the invention. That is in the discussion of the preferred involvement. But that doesn't tell us that the invention can only be done that way. In fact, it means the other way. It says, here's one way you can do it. There are others. But here's one way. So that doesn't help us much. What else do you have? Your Honor, it's true that that is in the preferred involvement section. But there's nowhere else anywhere in the patent, in the figures, in the remainder of the patent, or in the claims. Which tends to suggest, then, that they didn't mean to limit themselves. They didn't say anything in the rest of the patent that you have to label before filling. That this is a method that you can fill. The only thing you have to do is put the medicine in before you put the cap on, right? Everything else could probably be done in any order. Your Honor, we don't believe that's correct. Well, then, show me where in this. I've got Claim 1 in front of me. Where does it say you have to do a particular order? Claim 1 does not contain express language to that effect. But the invention itself is a series of machines that are arrayed along a filling line. And contrary to AutoMed's argument, it does matter what happens first here. What difference does it make if I slap the label on before I put the medicine in? Or I put the medicine in and then slap the label on? The difference is this is a system that is filling thousands, potentially, of different prescriptions for different patients. So it's extremely important to know which medicine ends up in which file. That's obvious. Of course, you're going to want to put the medicine in the bottle that's labeled properly. But why does it matter when you put the label on as long as you get it on the right bottle? Because in this patent... It certainly requires you put it on the right bottle. And the machines are going to make sure you put it on the right bottle. That's why you have a computer to do it. If you had a mechanism like this, and you had a label that had a barcode on it, so that when I went to the filling mechanism and read the barcode and put the right stuff in, then, of course, it would matter. You have to put the label on before it gets to the filler. That's not the way this one works. So I'm with Judge Rader. Forgetting even the application, you know, engineering point of view. What difference does it make? Your Honor, it makes a difference because in this system, it works exactly the opposite. The machine does not know what pills are supposed to be in the vial until the vial is under the filler and those pills are put in the vial. And as the patent states, it's at that point that the command comes from the computer system to dispense the pills, and then also then either simultaneously or just after that point, the label is applied. And if you apply the label before, there's nothing... What you just said, counsel, would be an answer to what I think Judge Rader asked. If, in fact, you fill the vial and then you tell the label or what label to put on it, then it has to be emptied. But I don't think that's... As Judge Rader asked, I don't think he's finding that in the application. We don't dispute that it could be done that way. In this patent, though, there's no teaching of doing it in the reverse order where the label is applied and then the empty vial travels down the line only to be filled later. The disclosure here, and there is an elaborate disclosure of a software system, a control system for running the system, and that disclosure states that the signal to apply the label is sent after the system already knows what pills have been filled or are being filled in the vial. There's nothing to tell you that if you've got your vial here and you put the label on it and it's in alignment with a lot of other vials. Why couldn't I just take that same software and say, okay, let's slap the label on here because that software is tracking that same bottle, and then we'll drop the pills in for patient Rader who needs Prozac. Careful, careful, Judge Rader. Good choice for my hypothetical. Your Honor, we don't dispute that that could be done, but it wasn't done here. That's not the system of this patent, and there's nothing in this patent that teaches that. Well, but is there anything in the patent that says you can't do it that way? I mean, where is it that that isn't the system of this patent? If you look at the entirety of the figures in the discussion and the specification, and in particular there was discussion at the top of Claim 6, the first few lines. I'm sorry, it's the wrong reference. It's on. It's on Claim 4, around line 18 to 20, 18 to 25 or so. There's a discussion that the first time you have a barcode reader, and that was a technology used in this system as a barcode reader to read the label, is after the capital, and that's in the discussion of where the system first knows what drugs are going to be in the vial and that the label is matched up to the vial. And if you also look in the description of the software, there's a discussion in column 10, around line 42, 43, that states that if it is determined that a prescription has been successfully filled, then a command is issued to the labeler to apply the label to the vial. And that's what I was talking about, where this system, again, we don't dispute, you could set up a system, and you could design it. Indeed, our clients now have done that, and that's why they're on the fringes of that. You could design a system where the control system tracks the label and knows what vial has that label so that when it comes under the filler, it will be filled. But that's not what was invented here, and the clearest evidence of that is in the prosecution record, where we have the new matter rejection that we've acquiesced to. The reason for that rejection was that the patent examiner, on reading this patent, saw that that was not the invention of this patent, and the applicant agreed with that. So there's nothing in this patent that affirmatively teaches how logistically these machines would know if a label were to be put on before the vial was filled, then which vial, when it gets under the filler, should get the pills for that vial, when there are a number of vials traveling down the line. So there is no disclosure of that element, and the strongest indication of that is in the prosecution history in the new matter rejection, and that is, as we've argued in the briefs, serves the public notice function. It serves the public who reads this patent and sees that they're describing the way you could have a label under a filler or after a filler. They read that and get something from that, and then what they get from the prosecution record is a very clear statement that you cannot in this invention, it was not part of the invention to label it before, to have the label before the filler on the filling line. And that's why the context of this patent makes it clear that consistently and without exception, described in the patent, the label must be under or downstream of the filler and cannot appear before. I'd like to address your opponent's response to that. That would apply to one claim, and so they have properly, appropriately said in that claim, we'll accept that, but they feel it has little or no application to other claims. Your Honor, we disagree with that because, for two reasons. Number one, the very nature of the rejection is a new matter rejection, saying it's not part of any disclosure in the patent, it's not part of your invention. So contrary to our opponent's argument, it is a critical piece of the invention. For the patent examiner to look at the specification and say that's not any part of your invention. The other piece of that is that there is not another claim that discusses labeling before filling. They relied on the in no particular order claim, and it is clear when you go back and look at that claim in the course of its prosecution, that claim confirms that the patent examiner, that as you noted earlier, Judge Rader, that the interpretation that it's the vials that are in no particular order is the correct one, and that's the way the patent office read it, because that claim was first added in the application at the same time claim 25 was amended to read before filling or labeling before or after filling. And so it read at that time that the vials are in no particular order, filled and labeled, which accounts for a circumstance where you may not have a first in, first out system. You have different vials coming out before the ones that they came in after. When the patent examiner rejected claim 25 for new matter, he did not reject that claim, claim 36 for in no particular order. It simply is not logical to say that the patent examiner would have read claim 25 to say new matter, if you label before you fill, but read that same, but read the no particular order claim to mean you can label before you fill. The examiner would have rejected both as new matter. And what happened here is that later in prosecution, after the new matter rejected was acquiesced to, then there was an amendment to change from plural vials to at least one vial. Either way, that still means that it's the vials in the system that can go through in no particular order. The first vial in doesn't need to be the first vial out. Ultimately, that claim is not asserted in this case. It doesn't need to be construed. It's enough that there is a meaning for it that does not support automatic argument that there can be other claims that put labeling before filling. And then lastly, we think that this Court's recent precedent in a number of cases that we've studied in our brief supports the reading, that the context, we must ground the claim language here in the context of the specification and the grounding for the claim language of the asserted claims that issue here in the context is that the labeler must be under or after the filler. There are a number of cases where in the specification, other than the preferred embodiment, which doesn't limit the rest of the invention. Your Honor, there are several places, and I also want to make one comment about preferred embodiment. And we've cited all these in our briefs. In the summary of the invention, there is a discussion, and I do agree it says in the paragraph, in an embodiment, but there is a discussion about how the system fills and then automatically labels. And in the section of the specification that we've discussed earlier, the preferred embodiment of this patent is where the labeler is under the filler. That's what their preferred embodiment is. The other embodiment within the scope of the invention is where the labeler is after the filler. So to say we're trying to limit it to the preferred embodiment is not correct. We're not trying to say the labeler has to be under the filler. It can be under or after the filler, which is consistent with what this patent teaches and the only thing that this patent teaches. So I think it's a bit of a misnomer to say that we're trying to limit it to the preferred embodiment when the preferred embodiment is under the filler. There are a number of cases, though, recent cases of this court that similarly find that the context of the specification in the prosecution history can limit the claim term even beyond what the ordinary meaning of that claim term might be. The Curtis Wright case, for example, where the term adjustable was held to require adjustment during use of the system as opposed to any adjustment to the system no matter when it happened. There you had claims that specifically required adjustment during use, but this court still held the context of the specification in that case required that the invention be limited to what the inventor actually invented and taught, which in that case was adjustment during use of the system. Here it's labeling under or after the filler. Other cases we've cited, the Nystrom case, a very similar case where the court held that the specification in the prosecution history limited the term board to be cut from wood. The Abraxas, the Honeywell, the INPRO 2 case, the on-demand machine case. There are a number of cases after this court's decision to fill it with support. Placing the claim language within the context of the overall language. Where the specification really clearly sets forth the limitations and the only things you've shown me here don't say the invention is a process that's limited to labeling after filling. It says an embodiment does it that way. And the claim only talks about automatically dispensing these things, which seems pretty simple to reverse orders and still keep things straight, particularly with computer technology. Your Honor, again, we don't dispute that it could have been done. It was not done here. There was no disclosure of the first way. But didn't they unequivocally disclaim the order? Yes, in the new matter rejection, in the acquiescing to the new matter rejection. They were silent. They were silent. Is silence an unequivocal disclaimer? Your Honor, they were not completely silent. They said that the claim had been amended in accordance with the examiner's official words without effect. That claim, again, that's a little bit ambiguous, isn't it? No, Your Honor. Do you think our other claims are still clear? No, Your Honor, because it was a new matter rejection, that means that there's no support in the specification for that being part of the invention. And in any claim, like the claims at issue here, where there's discussion of the position of the labeler relative to the other components of the filling line, that disclaimer would attach. Now, we do believe there has been a clear and unequivocal disclaimer here, but we don't think that the court has to find a clear and unequivocal disclaimer for the judgment of the district court to be affirmed. This result could be similar to, for example, the Nystrom case, where the court held that the statements in prosecution, while not sufficient to be a clear and unequivocal disclaimer, nonetheless showed that grounded within the context of the specification in the prosecution history,  And so we don't mean to suggest that the only way the judgment can be affirmed is if the district court's conclusion of the disclaimer, which we believe is correct, is affirmed. There are other ways, other arguments to affirm that judgment. Thank you. Sorry, I had a question. Thank you. Thank you. Briefly, Your Honors. The parties here are competitors. These machines that are at issue, they're large, expensive, complex pieces of machinery. The first one that was built was the subject of this patent application back in the early 1990s. There was nothing like it at the time. There's no automated system prescription that can churn out tens of thousands of prescriptions with patient-specific information out there on the marketplace when this patent was filed. So there was no prior art issue that this system, that was cited against the system. It's a new matter rejection. Doesn't that say there's nothing in this specification that allows you to label before you fill? That's correct. Do you acquiesce to that? Is that a problem for you? I don't believe it is. And I think that this, and I'll tell you why. I think that footnote 7 in the Ethicon case is right on point. Where you've got a new matter of rejection, what it's saying is there's no enabling disclosure in the specification to claim directly on point. But that doesn't mean you can't claim something broadly where it's not an essential part of the invention, which is what happened here. And if there were a piece of prior art out there that prohibited labeling and then filling, we would probably not be here. But this was a new system. We think it was a binary patent. It's not an essential part of the invention. It is. But there is a difference. And we want to be taught even in the application about the precise bias. The fact is, if the labeling is after or under the filling values, you never have to worry about which vial you picked up. Because the vials are fungible. You can just pick up a lot. You only have to worry about identity after you fill it. Whereas in a pre-filling labeling system, you do have to worry. That's a big difference. Certainly operationally, that's a big difference. It's an extra level of control. Just going to the bin, pick up a vial, any vial, it doesn't matter. It's different from going to the bottom and pick up the one that's already labeled so it can be exacted for this prescription. So unless you do this, it's a no-brainer. And that's a fair point, Your Honor. I would say in response to that, that at the time the system that was being contemplated that was being built for the Veterans Administration Hospital in Nashville, at the time, I don't think that the control system that they had in mind contemplated labeling and then filling. In fact, when the system got built, that's exactly what it did. It labeled first and then filled. So they were able to fix that in the control system. So by the time the system was up and running, it handled it in the same way that the defendant handles it here today. But going back to the claim language, that's the starting point. These claims, 1, 13, 18, and 22, there's no support in that language, the plain ordinary meaning of that language, to import those limitations. We think that contradicts a number of- Can you give us anything to show us that the order is fungible in this fact? I think what we could say is that it was not an essential element of the invention, and therefore it was secondary. There is nothing outside of the preferred embodiments where it discusses filling and labeling as the order being important. It's only in the preferred embodiments. And at the time, in fairness, that was the system that was contemplated being built. It's not how it ended up getting built, but that's how it was contemplated. And we think, as a patent, that with a new invention, AutoMed was entitled to claim broadly, which is what it's done here. I see my time is up. If there are no more questions, I'll sit down. Thank you. Thank you. This is the end.